**Donald E. BULLOCK, Petitioner,**

v.

**DEPARTMENT OF THE AIR FORCE, Respondent.**

No. 00–3027.

United States Court of Appeals, Federal Circuit.

DECIDED: March 13, 2001.

Rehearing Denied June 12, 2001.

Before CLEVENGER and DYK, Circuit Judges, SMITH, Senior Circuit Judge.*

PER CURIAM.

Donald E. Bullock ("petitioner") seeks review of a final decision of the Merit Systems Protection Board ("Board"), Docket No. AT–0752–95–0649–B–1, 84 M.S.P.R. 618, denying Mr. Bullock's petition for review of an initial decision. Following an earlier finding by the Board holding that Mr. Bullock had been improperly removed, the Board upheld the agency's determination that returning Mr. Bullock to the position of Electrical High Voltage Supervisor at Maxwell Air Force Base would cause undue hardship. Because the Board did not commit legal error in the procedures that it followed, we *affirm.*

## BACKGROUND

Mr. Bullock, an employee of the Department of Air Force ("agency"), was removed from his position as an Electrical High Voltage Supervisor, responsible for the Maxwell Air Force Base and Gunter Air Force in Alabama, on February 27, 1995. Mr. Bullock appealed to the Board which mitigated Mr. Bullock's removal to a three-day suspension. The agency appealed the mitigation, but the full Board denied the agency's petition for review on November 21, 1996.

While the Board proceedings were still pending, the agency appointed Billy Lambert to the Electrical High Voltage Supervisor position Mr. Bullock had previously held. At the time, the Electrical High Voltage Supervisor oversaw both the Maxwell Air Force Base and the nearby Gunter Air Force Base. Soon thereafter, but still during the pendency of the Board

---

* Senior Circuit Judge Smith heard oral argument but, due to illness, did not participate in the decision. This case was decided by the remaining judges in accordance with Fed. Cir. Rule 47.11.

proceedings, the agency underwent a reorganization in which the Electrical High Voltage Supervisor position was divided into two positions—one at each of the two Air Force bases, Maxwell Air Force Base and Gunter Air Force Base. Mr. Lambert was then placed in the supervisory position at the Maxwell base. Mr. Lambert then retired, and the agency selected Wayne Deer to take Mr. Lambert's position at the Maxwell base.

After the Board affirmed the initial decision mitigating Mr. Bullock's removal to a three-day suspension, the agency proposed placing Mr. Bullock on detail in the position of Wire Communications Cable Splicer Helper effective December 9, 1996, a position with fewer responsibilities than his original position. The agency did not propose returning Mr. Bullock to his original position because that position no longer existed, and the agency believed intense training would be required before Mr. Bullock would be capable of performing the duties of the Electrical High Voltage Supervisor position at the Maxwell base. On March 10, 1997, the agency reassigned Mr. Bullock from the Cable Splicer Helper detail to the Electrical High Voltage Supervisor position at the Gunter base.

On March 15, 1997, Mr. Bullock filed a petition for enforcement of the November 21, 1996, decision, requesting, among other things, reassignment to the Electrical High Voltage Supervisor position at the Maxwell base. In an August 19, 1997, initial decision, the administrative judge ruled against Mr. Bullock, finding that Mr. Bullock had been given duties and responsibilities that were substantially equivalent to those of his former position. Mr. Bullock petitioned for review to the Board.

On December 2, 1998, the Board granted Mr. Bullock's petition for review, vacated the initial decision, and remanded to the administrative judge to determine whether Mr. Bullock would have been appointed to the Electrical High Voltage Supervisor position at the Maxwell base instead of Mr. Deer if Mr. Bullock had not been wrongfully terminated. *Bullock v. Dep't of the Air Force*, 80 M.S.P.R. 361 (1998). The Board also remanded so that "the agency could show that this appointment [of Mr. Bullock to the supervisor position at the Maxwell base] would cause undue interruption or administrative hardship," in which case it would be proper for the agency to have declined to assign Mr. Bullock to the Maxwell position.

On remand, after conducting a telephone conference with the parties, the administrative judge issued an order on March 4, 1999, requiring final submissions from the parties by March 22, 1999. In the order, the administrative judge requested submissions on, *inter alia*, whether the agency had a strong overriding interest in proposing the detail of Mr. Bullock to the position of Wire Communications Cable Splicer instead of to the Electrical High Voltage Supervisor position at the Maxwell base, and whether Mr. Bullock's appointment to Deer's position "would cause undue disruption or administrative hardship." The administrative judge also informed the parties that "the record in this compliance matter will close on March 22, 1999," the deadline for final submissions on these issues by the parties. Mr. Bullock and the agency filed their final submissions responding to this order on March 17 and 22, 1999, respectively.

After reviewing the parties' final submissions, the administrative judge in a April 2, 1999, initial decision, found that the "agency's concerns about the appellant's fitness for duty constitute a strong overriding interest in proposing the appellant's detail." In making the decision, the administrative judge evaluated evidence submitted by the agency in its March 22,

1999, final submission, including a memorandum by Lieutenant Colonel Gregory Coker which expressed concern for the safety of Mr. Bullock, his co-workers, and the public because Mr. Bullock had been previously incapacitated for duty due to a mental condition related to stress, and concluded that the Electrical High Voltage Supervisor position at the Maxwell base would be particularly stressful. The administrative judge noted that although the Coker memorandum was not notarized, Mr. Bullock "did not submit any evidence in his final submission that addresses, let alone contradicts, the statements in this Memorandum for the Record."

In the April 2, 1999, initial decision, the administrative judge further noted that Mr. Bullock had declined to submit to a fitness-for-duty examination, and that Mr. Bullock's own evidence raised legitimate concerns about his ability to work in a high-stress environment. Lastly, the administrative judge analyzed whether placement of Mr. Bullock into the Electrical High Voltage Supervisor position at the Maxwell base presently held by Mr. Deer would have caused undue interruption or administrative hardship. The administrative judge reviewed the evidence submitted by the agency concerning the amount of training that would be needed to familiarize Mr. Bullock with the electrical systems at the Maxwell base. The administrative judge concluded that training Mr. Bullock so that he could take over Mr. Deer's position at the Maxwell base would cause undue interruption and administrative burden (and noted the lack of evidence from the petitioner to the contrary), and that the potential for loss of life or property constituted an undue disruption. The administrative judge therefore denied Mr. Bullock's petition for enforcement.

Mr. Bullock filed a petition for review of the initial decision on May 5, 1999. The agency then filed its response to the petition for review on May 28, 1999. On August 26, 1999, the Board issued a final order, denying Mr. Bullock's petition for review due to a lack of "new, previously unavailable, evidence" and because the "administrative judge made no error in law or regulation that affects the outcome." The final order further stated that the Board did not consider Mr. Bullock's "cross-petition" for review dated June 21, 1999, in which he further challenged the agency's March 22, 1999, submission, because Mr. Bullock "has not shown that it is based on evidence not readily available before the record closed," citing 5 C.F.R. § 1201.114(i). This petition for review by Mr. Bullock followed.

## DISCUSSION

Decisions of the Board must be sustained unless they are arbitrary, capricious, not in accordance with law, obtained without procedures required by rule, law, or regulation, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

■ Mr. Bullock contends that the Board violated his right to due process when it allegedly denied him the opportunity to respond to new evidence presented to the administrative judge. Although Mr. Bullock does not make it clear what "new evidence" he is referring to, it appears from his petition for review dated May 5, 1999, that he is mostly likely referring to evidence submitted in the "Agency Response to Order" filed by the agency on March 22, 1999. In the March 4, 1999, order, the administrative judge requested final submissions from the agency and Mr. Bullock by March 22, 1999. The order did not permit Mr. Bullock to file a response to the agency filing. Mr. Bullock filed his final submission on March 17, 1999, while

the agency filed its submission on March 22, 1999.

■ Mr. Bullock contends that "the record is sufficient to show that Mr. Bullock was denied due process and not allowed to respond to new evidence presented to the AJ."[1] His contention fails on at least two grounds. First, in order to successfully establish a denial of due process, there must be a showing of procedural unfairness. Mr. Bullock has not made any showing that he was surprised by the March 22, 1999, agency submission, or that the information provided in the submission exceeded the scope of the request by the administrative judge. The mere fact that the agency was allowed to respond to the March 5, 1999, order at the same time as Mr. Bullock (by March 22, 1999) does not establish a denial of due process.

Second, the agency contends, and we agree, that "Mr. Bullock has presented no evidence that supports the proposition that he was denied an opportunity to be heard." The record does not reflect, nor does Mr. Bullock point out, that the administrative judge excluded or refused to consider evidence submitted by Mr. Bullock in response to the March 22, 1999, agency submission. Apparently, Mr. Bullock's first objection to the alleged new evidence did not occur until he filed his petition for review on May 5, 1999. In this petition for review, Mr. Bullock, *inter alia*, objected to the new testimony and evidence submitted by the agency on March 22, 1999, and requested that the Board "permit the appellant to supplement the record, based upon new information provided to the Administrative Judge by the agency in its final submission...." The record however fails to reflect any specific evidence that Mr. Bullock proposed to use to rebut the evidence submitted by the agency in the March 22, 1999, final submission.

This court has consistently rejected allegations of a due process violation when the appellant fails to come forward with specific information regarding the documents or witnesses that would have been brought forth by the appellant. For example, in *Davis v. Office of Personnel Management*, 918 F.2d 944, 946 (Fed.Cir.1990), this court rejected a claim of denial of due process where "petitioner has failed to come forward with evidence that the documents submitted were insufficient, or that the witnesses' testimony would add anything to the information in the record." More than mere allegations are required in order to substantiate a due process violation. In another similar case, *Tiffany v. Department of the Navy*, 795 F.2d 67, 70 (Fed. Cir.1986), this court rejected a claim of denial of due process because, *inter alia*, the appellant "failed to come forward with any specifics as to agency employees whose testimony she was deprived of, or the relevance and materiality of this allegedly excluded testimony." The court additionally noted that Tiffany also failed to show how the allegedly excluded testimony "would buttress her case, or be other than repetitious testimony." *Id.* The court therefore rejected her claim of due process violation. Likewise, in this case we are obligated to reject Mr. Bullock's claim of denial of due process.

We also find the factual issues raised by Mr. Bullock to be without merit.

1. Mr. Bullock also contends that the Board's decision is contrary to the Judge's Handbook for the Merit Systems Protection Board at chapter 5, paragraph 2b which states that "[t]he AJ should not rule on substantive, controversial or complex motions without allowing the opposing party an opportunity to object." The Judge's Handbook is not a "law, rule, or regulation" which would initiate a reversal under 5 U.S.C. § 7703(c). In any event, the Handbook appears largely to codify the requirements of due process.

For the foregoing reasons, we affirm the Board's decision.

## COSTS

No costs.